UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.: 07–CR–00176 (EGS) |
| | : | |
| v. | : | |
| | : | |
| **DONALD H. ROBERTS** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Comes now the United States, by and through its undersigned attorneys, and hereby submits this Memorandum in Aid of Sentencing. After accounting for acceptance of responsibility, defendant Donald Robert's offense level under the United States Sentencing Guidelines is 15 which yields an advisory Guideline range of 18 to 24 months imprisonment. The government requests a sentence within that Guideline range, deferring to the Court as to the appropriate sentence within that range.

1. **BACKGROUND**

On July 18, 2007, a twenty-three count Indictment was returned by the grand jury charging Donald Roberts with Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 and twenty-two counts of Aiding and Assisting in the Filing of False U.S. Income Tax Returns in violation of 26 U.S.C. § 7206(2). Conspiracy to defraud carries a maximum sentence of five years' imprisonment; a maximum fine of the greatest of $250,000, twice the pecuniary gain derived from the offense, or twice the gross pecuniary loss to the United States; a $100 special assessment; and supervised release of up to three years. On April 30, 2008, Roberts pled guilty to Count One of the Indictment. The government agreed to dismiss the remaining counts at sentencing. Sentencing is scheduled before the Honorable Emmet G. Sullivan on July 17, 2008.

2.  **STATEMENT OF FACTS**

Donald Roberts was the sole owner of X-Press Refund Tax Service ("X-Press Refund"), a tax preparation business located at 2642 12th Street NE, Washington, DC. From 2001 through at least April 2005, Roberts' business prepared more than 2,000 individual income tax returns per year.

Roberts trained and hired employees for each year's tax season, some of whom returned from the previous year. Most, if not all, of these employees had no prior experience preparing tax returns before working at X-Press Refund. Roberts and more senior employees trained the new employees. This training occurred on the job. As part of this training, Roberts improperly instructed and/or supervised his employees on how to claim specific deductions on a client's Form Schedule A (regardless of whether the client actually expended the funds). Roberts also answered any questions that the employees asked of him regarding a client's tax return. Roberts prepared returns filed by X-Press Refund and reviewed other returns prepared by X-Press Refund employees before the returns were filed.

Roberts and the employees at X-Press Refund prepared false individual income tax returns for clients for the tax years 2000 through 2004. These false returns resulted in the clients' receipt of refunds in amounts larger than what they were actually entitled. The returns were false as they included false line items on Forms Schedule A, false sole proprietorship businesses reported on Forms Schedule C, false Lifetime Learning Credits, false dependents, and false filing status. The false Forms Schedule A typically included false or inflated charitable deductions, false or inflated tax preparation fees, and false or inflated unreimbursed employee expenses, including expenditures for uniforms, seminars, work tools, and union dues. The clients, however, neither incurred these expenses nor represented to either Roberts or his employees that they incurred these expenses.

The clients of X-Press Refund included teachers, nurses, and law enforcement personnel (including officers of the United States Capitol Police). For each of these professions, Roberts and the employees at X-Press Refund used "standard" deductions for alleged unreimbursed job expenses, to include uniform purchases, dry cleaning, and mileage expenses, even though clients were not eligible for such deductions or did not incur the expenses. With regard to law enforcement clients, Roberts represented to these clients that they were entitled to claim tax deductions for meals purchased and consumed while employed. Roberts claimed deductions of $2,400 for "Meals per Supreme Ct ruling." Roberts falsely represented to these clients that according to an alleged Supreme Court decision, law enforcement personnel were automatically entitled to take such a deduction regardless of whether such expense was incurred.

For tax year 2001, X-Press Refund prepared 2,020 tax returns. Of those returns, 94% sought refunds. For the 2002 tax year, X-Press Refund prepared 2,025 tax returns, with 95% of those returns requesting refunds. For the 2003 tax year, X-Press Refund prepared 2,500 tax returns, and 95% of the returns requested refunds. For the 2004 tax year, X-Press Refund prepared 2,682 returns, with a 94% refund rate.

3.   **PLEA AGREEMENT**

The plea agreement was accepted by District Court Judge Emmet G. Sullivan pursuant to the terms of Fed. R. Crim. P. 11(c)(1)(B) on April 30, 2008. According to the terms of the Plea Agreement, the parties agreed that the tax loss is greater than $80,000 but less than $200,000. In addition, the parties agreed that, pursuant to § 2T1.9, a two-level increase in offense level is merited because the defendant was in the business of preparing federal and state tax returns for clients. The government agreed that the defendant was eligible for a three-level reduction for acceptance of responsibility, resulting in an offense level of 15. The agreed recommended

Guidelines range is 18 to 24 months incarceration. Mr. Roberts agreed to close X-Press Refund and cease from engaging in the paid preparation of tax returns.

**4.    SENTENCING GUIDELINES COMPUTATION**

The language of the plea agreement states that the Court is obligated to calculate and consider the 2006 version of the United States Sentencing Guidelines. As set forth in the plea agreement, section 2T1.1 of the Guidelines Manual controls sentencing for tax crimes, and requires that the tax loss resulting from defendant's conduct be computed in order to determine the base offense level by reference to Section 2T4.1 (Tax Table). As set forth above, the tax loss is greater than $80,000 and less than $200,000 and a two-level increase in offense level is merited because the defendant was in the business of preparing federal and state tax returns for clients. According to the plea agreement, the 2006 Sentencing Guidelines dictate an offense level of 18. An agreed three-level reduction to the offense level for acceptance of responsibility brings the offense level to level 15 which results in a sentencing range of 18 to 24 months imprisonment.

**5.    DISCUSSION**

After properly calculating the advisory Guidelines range, the Court should consider the factors set forth at 18 U.S.C. § 3553 in determining the appropriate sentence in this case.[1] These

---

[1] As this Court is aware, the district court needs to consider the goals of Section 3553 in determining the appropriate sentence, however, the court is not required to specifically refer to each factor listed in § 3553(a). See United States v. Ayers, 428 F.3d 312, 315 (D.C. Cir. 2005). Section 3553(c) provides that the court at the time of sentencing shall state in open court the reasons for its imposition of a particular sentence. Section 3553 specifically sets out the factors to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the . . . offense . . . as set forth in the guidelines . . .; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid

factors include consideration of the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, and to afford adequate deterrence.

      Mr. Roberts' conduct of preparing false tax returns for clients, through his business X-Press Refund, seriously undermines the tax system of the United States. Our tax system relies upon the voluntary compliance of each taxpayer to assess and pay their fair share of taxes into the system. The United States tax compliance relies on the honor system – the truthful reporting of our citizens. For taxpayers to be motivated to be truthful and to pay their fair share, they need to believe that their neighbors and co-workers are also being truthful and paying their fair share. Taxpayers need to believe that there are substantial consequences for lying on their tax returns and not paying their fair share of taxes. Ensuring that tax return preparers exercise appropriate due diligence when advising taxpayers and preparing tax returns is critical to voluntary compliance and the integrity of the tax system. To ensure respect for this voluntary system of compliance, those who do not truthfully report and pay their fair share of taxes need to be prosecuted and appropriately punished.

      Tax practitioners have a critical role in the tax system, annually advising and preparing returns for tens of millions of taxpayers. It is in the public interest and essential to the integrity of the tax system to ensure that tax practitioners, particularly paid tax return preparers, operate within a strong ethical framework and adhere to professional standards. Unscrupulous tax return preparers greatly undermine our system of voluntarily compliance. Not only does their conduct produce the obvious result – a false income tax return for a client and money lost from the public fisc, but, also, the conduct detrimentally impacts voluntary compliance. The unethical and criminal

---

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

conduct by the paid tax preparer plants the seed in a taxpayer's mind that *everyone cheats on their taxes and it is okay.* When a professional tax preparer routinely and systematically engages in the preparation of false tax returns for clients in a systemic basis, like Mr. Roberts' conduct, he sends a corrosive message to the otherwise taxpaying public. To his employees and clients, Mr. Roberts' conduct screams: *cheating on your taxes is acceptable conduct.* Such behavior erodes our voluntary compliance system, and significantly contributes to the ever increasing Tax Gap faced by the United States.[1] Ensuring that tax return preparers behave honestly and exercise appropriate due diligence when advising taxpayers and preparing tax returns is important to the fairness of the U.S. tax system and to the effectiveness of tax administration.

Accordingly, the sentence imposed in this case needs to demonstrate that the consequences of this type of tax cheating are serious, and merit punishment. A sentence within the voluntary guidelines range promotes respect for the law and sends a strong deterrent message to the paid tax preparation community and others, who may otherwise be inclined to cheat on their taxes. The message that the United States will not tolerate tax cheats needs to be heard by those, who through their profession, interact regularly with thousands of taxpayers in each tax season.

Based upon the § 3553 factors as enumerated above, the government accordingly requests that this Court sentence defendant within the sentencing range under the advisory Guidelines, that is 18-24 months under the calculations of the plea agreement. See United States v. Lawson,

---

[1] IRS reported that the gross Tax Gap for tax year 2001 was $345 billion, resulting in a gross noncompliance rate of 16.3 %. The largest source of noncompliance is with respect to the individual income tax – accountable for $244 billion, or approximately 71% of the gross Tax Gap. More than 80% of the gross Tax Gap is due to under reporting of tax liability – as in this case – a result of understatements of income and overstatements of deductions and credits. See Internal Revenue Service, "IRS Updates Tax Gap Estimates," IR-2006-28, February 14, 2006 and Government Accountability Office, "Tax Compliance: Opportunities Exist to Reduce the Tax Gap Using a Variety of Approaches," GAO-06-1000T, July 26, 2006.

494 F.3d 1046, 1058 (D.C. Cir. 2007); United States v. Watson, 476 F.3d 1020, 1023 (D.C. Cir. 2007), citing United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006) (On appeal, a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness.); accord United States v. Rita, 127 S.Ct. 2456, 2463 (2006).

A sentence consistent with the appropriate Guidelines range will serve the dual purposes of punishment and deterrence. See 18 U.S.C. § 3553(a)(2)(A) & (B). Moreover, a Guidelines sentence within this appropriate range furthers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As to the appropriate sentence within the Guidelines range, the government defers to the Court.

Finally, the government requests this Court place defendant on a three year term of supervised release following his incarceration to monitor his cooperation with the terms of the plea agreement.

## CONCLUSION

WHEREFORE, the government respectfully requests this Court impose a sentence within the applicable voluntary Guidelines sentencing range, followed by a period of supervised release.

Respectfully submitted,

NATHAN HOCHMAN
ASSISTANT ATTORNEY GENERAL
TAX DIVISION


_____/s/_____
KAREN E. KELLY
Virginia Bar No. 35403
MARK F. DALY
Massachusetts Bar No. 640581
Trial Attorneys
U.S. Department of Justice
Tax Division
P.O. Box 972
Washington, D.C.  20530
Tel:  (202) 514-5150
Fax:  (202) 616-1786

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on July 7, 2008, a copy of the Entry of Appearance order was served on counsel for defendant by filing the same with the Electronic Case Filing system.

                _____/s/_____
                Mark F. Daly
                Trial Attorney